The second case of the day is People v. Sean Bradley, and for the appellant it is Mr. Frank, and for the athlete it is Ahmed. You may proceed. May it please the court, counsel. This is a criminal case. In July of 2011, the defendant was charged with committing unlawful possession of a weapon by a felon and reckless discharge of a firearm. His co-defendants in this offense were Feletti and Gilmore. In January of 2012, the child court known crossed the charges in regard to the defendant. The agreement between the defendant and the prosecutor was read into the record in open court. The prosecutor stated that the defendant would be expected to testify against Feletti and cooperate with the state in terms of keeping a current address and communicating with us. The prosecutor added that the defendant would be expected to testify pursuant to the information that he gave to the police, and again, cooperate with the state in being a witness, and if he failed to do that, the state would be able to refile the charges and any further charges against the other defendants. Later in January of 2012, the state lost a motion to dismiss on speedy trial grounds against a co-defendant, Feletti, and ultimately lost the appeal in that matter. In April of 2012, co-defendant Gilmore took a plea for three months of probation, so the defendant's testimony was not needed in either case where the case against Feletti had been dismissed and Gilmore had pled guilty. In November of 2012, the state again charged the defendant with the lawful possession of a weapon and reckless discharge of a firearm. In August of 2013, the circuit court granted the defendant's motion to dismiss the charges, the court finding that the state had violated the immunity agreement by refiling the charges. The question raised in this appeal is whether the circuit court erred in dismissing the criminal charges against the defendant on grounds that they were filed in violation of the defendant's hierarchy with the state. The state has two separate points to make in arguments as to why the trial court erred in dismissing the charges. First, we would maintain that the trial court incorrectly interpreted the language of the cooperation immunity agreement. The findings of the trial court were contrary to the manifest way of the evidence. The agreement, as recited in court, clearly stated that Mr. Bradley would be expected to testify and cooperate with the state. Well, that is a two-prong agreement. The agreement, counsel, let me ask you a question. You're correct that it said that he would be expected to testify. Now, the reason he didn't testify was out of his control, correct? Yes. I don't believe it plays any part in the analysis of the terms of the agreement. I think that motive and justification should not be considered at all. That, for example, I thought, what if the co-defendant died? That would not have been the fault of the defendant or the state. He would not have been able to testify. The fact that the agreement clearly stated he would be expected to testify, and I think that if you put the agreement and construe it exactly how it states, would be expected to testify, means he testifies. It doesn't mean he's ready, willing, and able like the trial court found. What if, in Lenny's case, instead of being dismissed based on the speedy trial violation, what if it had been disposed of by way of a plea agreement, a bloody but guilty? Do you think that you have the same result here, that you're urging? I think he would be expected to testify. It's pretty clear. They expected him to testify. It doesn't matter what happens to the other cases. It was a two-prong agreement. Well, at what point did he say, I'm not going to testify? It doesn't matter if he's ready, willing, and able to testify, would be expected to testify with the agreement. In the Smith case, counsel, is it reasonable to infer would be expected means that if we call upon you, we expect that you will cooperate and testify on our behalf. Is that a reasonable interpretation of that versus he would be expected to testify, and if for any reason he does not testify, the deal is off? In the Smith case, they put it into the agreement, testify or would testify if needed. In the Smith case, I didn't agree. I think that it's clear he was expected to testify. Otherwise, the agreement is pretty much guided. Have you thought about the impact the ruling would have, the ruling that you're seeking here would have on future cooperation and unity discussions with defendants? If a defendant was told, you can enter into this cooperation and unity agreement, but if the defendant pleads guilty or if the defendant's case, your co-defendant's case is dismissed, you could be right back here facing the same thing again. Why would a defendant do that? Why would he or she put themselves in that position? I think that if this court does not construe the agreement, would be expected to testify. I think that in future cases, defendants might agree to anything just to get a signature on the line. But the state is capable of protecting itself and being clear in its agreements, correct? Are you suggesting that somehow the state could not negotiate with defendants and their attorneys? I think they negotiated in this case, and I think it's pretty clear what they negotiated, and it would be expected to testify. You've got the entire agreement if you let him not testify. The state would maintain if the trial court also erred in finding that the defendant subjected himself to whatever possible repercussions may occur for testifying. There's nothing in the record to support this court's finding, and there's nothing in the record even suggesting that the defendant was fearful or slightly inconvenienced by his status as a state witness. So we would ask this court to find that. In the real world, if somebody volunteers to be a rat, they're at risk. Wouldn't you agree with that? There's nothing in the record to support that. They're out on the street, and the world knows that they've agreed to testify against a code of ethics. It's a dangerous position to be in, isn't it? It could be, but there's nothing in the record to support that finding by the trial court. So we'd ask this court to disagree with that circuit court finding. Do you believe the fact that this defendant was willing to testify played a role in the state being able to resolve it in a manner where the co-defendant fled? That is possible, but that's not in the record either. There's nothing in the record that says that the prosecutor put pressure on the co-defendant by saying, hey, we'd rather testify against you. Is that a reasonable inference to be drawn, that that's why the state entered into such agreement with the intention or the hopes that it would influence their case against the co-defendant and strengthen their position? I think that that is an inference. The co-defendant could have fled guilty just because he wanted to dump his case and get out of the pressure of the case rather than because the co-defendant was going to testify against him. I think that there's other reasons people plead guilty besides the fact that there's a co-defendant from the defendant to testify. There are three cases here in the briefs that all three make some reference to the potential necessity to an evidentiary hearing. People need Starks, people need Smith, people need Smith. Are you satisfied here that, I'm assuming that the parties proceeded by way of pressure at the motion to dismiss hearing as opposed to having witnesses testify? I think that the agreement was read into the record at that hearing on Nall Cross, and I think the parties relied on what was read into the record. Okay, and so is that sufficient then under those three cases? Because I believe the evidentiary hearing that was being referred to related to the motion to dismiss hearing as opposed to the time that the cooperation and unity agreement was being read into the record. So are you satisfied that this court has what it needs to make a decision? I believe it does. It made my argument that it's based on that prior reading into the record, but if this court decides to remand for an evidentiary hearing, that would be fine also. That's not what you're asking for, though, correct? I did not ask for that. My second part of my argument is that the defendant is not entitled to specific performance of the immunity agreement, or he had not been deprived of his liberty or any constitutionally protected interest in reliance on the agreement. There are three types of agreements. There's a plea agreement. This is not a plea agreement. There's a statutory immunity agreement. This is not a statutory immunity agreement. This is a cooperation and unity agreement. And I think I read a lot of cases countrywide, and contract law has been applied in most cases to interpret what should happen when there's a problem in a cooperation and unity agreement. And specific performance of the agreement not to press is appropriate unless the government's breach resulted in no prejudice to the defendant. In this case, we're arguing that the defendant was not prejudiced. There was no detrimental reliance by him on that agreement. Now, the cases have found detrimental reliance where a defendant waives his Fifth Amendment rights by self-incriminating himself through a polygraph, or by testifying against a co-defendant, or by giving a statement where he incriminates himself. In this case, the defendant did nothing. So there's no detrimental reliance by him, and therefore… So nobody took a statement from it? No police officer, no state's attorney took a statement from it? Any statements were pre-agreed. But that's what we know from the record at this point, correct? Yes. It's not definitive that no statement was taken after. I mean, there's no reference to a statement taken after, but that doesn't necessarily mean that one did not occur. Is that correct? Yeah, I think that's probably correct. But I'm assuming that there was no mention of a statement at the hearing. So his counsel and nobody mentioned a statement that he did anything in detrimental reliance. In fact, I think two cases cited in my brief are pretty good law. The Gossage case is a First District Vector 84 case out of Illinois. It's a state appeal. The trial court dismissed the charge on the ground that the state was a stop from prosecuting where the defendant agreed to participate in a drug program in exchange for the state's agreement not to prosecute. The state later determined that the defendant was not eligible for that drug program because he had possession of more than 100 grams of marijuana. And the appellate court found no prejudice to the defendant. He had given up no substantial rights when he made it, you know, as a – he had not – there was no detrimental reliance, and he gave up no substantial rights in that case. Did that case also turn on the fact, though, that the court couldn't impose a sentence that it wasn't authorized to impose with respect to this drug program? Yes. Yes, it did. Counsel, if we're talking about contractual terms here and a cooperation immunity agreement being subject to contract law, if we go your route, which is to say that the state could withhold the benefit of the bargain to the defendant simply by not going to trial in the codependent's case, isn't that a unilateral type of contract? I mean, in that situation, a defendant would never have the ability to comply with the terms of the contract. Is that truly a contract? I think there were promises made on both sides, and because he detrimentally did not rely on the contract, the circuit court should not have ordered specific performance. But you're saying that in any cooperation immunity agreement where testimony is the required element on the part of the cooperating defendant, the state always has the ability to end that codependent's case in some way or another and that that voids the agreement unilaterally. Is that true? It's the same way with a plea agreement. Until you get into court and a guy pleads, it's really not an agreement. Are there any other questions? If we would ask this court to reverse the circuit court and reinstate judges. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. May it please the court? Counsel? Despite his compliance and for reasons unrelated to any actions of Mr. Bradley, the state blindsided him by re-filing the charges almost a year after an all-across of his case. In granting Mr. Bradley's motion to dismiss these charges, the trial court found the state's actions to be egregious. Thus, this court should agree with and affirm the trial court's judgment. Now, Your Honors, I'd like to address a couple of issues raised by the state, one of which is that the state argues the terms of the agreement required Mr. Bradley to testify against his plea case. And because he didn't, they were allowed to re-file the charges against him. Your Honors, the state's interpretation of these terms would have made it impossible for Mr. Bradley to comply with the agreement. Through no fault of his own, one co-defendant in this case was dismissed because the state had violated his right to see a trial. And the other co-defendant pleaded guilty. And to deprive Mr. Bradley of his due process right to not be guilty to court for circumstances out of his control is grossly unfair and is a far cry from good faith and fair dealing. Moreover, the state argues that Mr. Bradley did not detrimentally rely on the agreement. He clearly didn't, on the record. In fact, Mr. Bradley maintained diligent contact with the state. He provided them with a recent boarding address. Additionally, he had called the public defender's office to find out if there was any word from the state because he hadn't heard from them for almost— How is that to his detriment, though? That suggests that he's complying with the terms of the agreement, but how is that done to his detriment? That's correct. Well, Your Honors, under People v. Smith, in a cooperation agreement, which is basically an agreement not to prosecute the defendant, his cooperation, although it is enough consideration to create an enforceable contract, but in addition to just his cooperation, he detrimentally relied on placing himself in a vulnerable position, in a vulnerable position by agreeing to be a testified witness against the co-defendant who was charged with reckless discharge of a firearm, unlawful possession of a weapon, and who was later released from prison. He was at risk here. And as a result, that would be considered detrimental to the lives, which required the state to fulfill its part of the bargain, which was to maintain that formal promise. You mentioned that the charges, the attempt to refile, was almost a year after the initial agreement. Let's say it was the day after the initial agreement. Are you saying that once the agreement has been decided on the record in court, that the state can't rescind the agreement for any reason? No, that is not what I'm saying, Your Honors. If, let's say, the defendant was at risk, for example, if he just fell off the bridge, once that agreement was entered into, yes, it's enforceable, but of course, the defendant has to fulfill his part of the bargain. If he failed to maintain contact with the state, provided an incorrect address, did not cooperate at all, then yes, he would be breached, and the state would be allowed to refile his charges. And I'm sorry, but I didn't mean to suggest that any part of my question contemplated the defendant not doing something in compliance with his part of the bargain. But, let's say, the day after the cooperation and unity agreement was recited on the record, the state finds that it has some very powerful evidence, doesn't need the defendant's cooperation at all, seeks to rescind at that point. Should they be able to do that? The temporary should not have to also think after that. Even if it was the day after, and if they decided they did not want to go through with this agreement, it's binding upon that, upon the defendant's cooperation, and the fact that he placed himself in a position to be a testifying witness. Counsel, you mentioned the Smith case, and I want to get back to what Justice Harris was saying. In the Smith case, you talk about the fact that the court held that they could not reinstate the charges against her, but in that case, after the agreement was reached, she did participate in basically securing a drug seller. Is that correct? That's correct. Do you think there's an issue here where we need to determine what, if anything, what steps your client took to his detrimental reliance after this agreement, such as being interviewed or taking some action on behalf of the police or anything of that nature? Do you think we need to delve into that? Yes, Your Honor. Your Honor, I do think that it's important that there's some sort of reliance on agreement that's being demonstrated here. For example, there needs to be some sort of cooperation, and that is shown on the record, that he did cooperate. And so we need to have some evidence indicating that the defendant is relying on this agreement to make sure that it's fully enforceable, and in order for the state to fulfill its part of the bargain as well. But as counsel mentioned, there's nothing on the record indicating, for example, that he gave a statement after this agreement was entered into the court, correct? That is correct. There's nothing on the record, Your Honor. But the state has failed to mention the fact that he has not detrimentally relied either. I mean, at the hearing on the motion to dismiss the charges, it is clear that the defendant didn't maintain contact. And that goes towards cooperation, that he maintained contact with the state and the public defender's office, that he proactively sought to agree to be a testifying witness, and the fact that he placed himself in that position. All of that is shown on the record, Your Honor. So that is enough to indicate that he cooperated. And to quote the trial court in its ruling at the hearing on the motion, the trial court stated, contrary to the state's accession, that he didn't do anything. Yes, he did. He has remained available as a state's witness since the date the case was called across. And in a multi-defendant criminal case, who's willing to testify against his co-defendants, is definitely giving up something. The state understands that. The defense understands that. It would be ludicrous for us to plead otherwise. So, Your Honors, it's clear that Mr. Bradley had detrimentally relied on Mr. Lincoln, making it enforceable. Now, the state does refer to a couple of cases involving plea agreements. And she does mention that it does apply in terms of contract law principles. However, this is a cooperation in a plea agreement. In a cooperation in a plea agreement, it is an agreement not to prosecute. And the due process implications are different from the due process implications of a plea agreement. Here, the defendant is afforded the right to not be guilty to court. That once his charges are dismissed, he will not be brought and prosecuted again. Whereas in a plea agreement, this defendant is waiving his right to a jury trial. This defendant recognizes self-incrimination. And so the consequential – there are consequential differences. And so it's hard to compare the two. And in terms of people being caught in gossage, as I think Justice Harris pointed out – or Justice White – that this case is distinguishable, given the fact that it was a conditional agreement. In Mr. Bradley's case, the state had null across the defendant's charges in open court. And that was court-sanctioned. And so at that point, the defendant is entitled to rely on it to a certain extent. Whereas in people being gossaged, however, the state only promised to null across the charges once the defendants actually completed the drug abuse program, which they didn't do here. They just signed an agreement to enter into the program. But that was it. So really, that agreement was null and void at the outset. And because it was null and void at the outset, it was not agreed to. It was not an agreement to begin with, and the state was warranted to revile the charges. So, Your Honors, if there are no further questions, Mr. Bradley detrimentally relied on it. Because Mr. Bradley detrimentally relied on it and fully complied with the terms of the cooperation agreement, he respectfully requests that this Court affirm the trial court's decision to grant this motion, dismiss the reviled charges. Thank you. Thank you. We vote on this as a claim. Briefly, my point is arguing that the defendant diligently complied with the cooperation agreement by maintaining contact with the State's Attorney's Office and being available to testify. However, I think that the hearing on the motion to null across the charges was the moment when the defendant gave his uncle's address as his contact. And as far as I can tell on the record, that's the only thing he actually did. That was the day of the hearing. Are you saying that he cooperated in all respects other than you're saying that he did testify? Cooperation in as defined as contacting his attorney once. I'm not sure. I'm asking you are. Are you saying that you believe there's a dispute as to whether or not he complied with the terms of the agreement other than the fact that he did not testify? I don't believe that. I mean, he gave his contact information the day of the null across, and that was it. That's all he did. What else was he required to do? He was supposed to be agreed with other than testify. Would be willing to, would be expected to testify and to cooperate with supplying his contact information and communicating with us, communicating with us. And so based on the record, what is it that he failed to do other than the fact that he didn't testify because he didn't get a job? Never communicated, to my knowledge, other than involving in coordinating or never communicated at all with the state attorney's office. What in the record supports that assertion? I believe that the representation of his counsel was that at the hearing on the motion to dismiss, the representation by his counsel was that he gave his uncle's address on the date of the null across as his contact information. And then he contacted the public defender one time, like in March. And that was if he didn't contact the state attorney's office at all. There's no evidence of a... Well, so when Ms. Ahmed said that he tried to call the state attorney's office on several occasions and never got a call back, she, you're wrong? I don't remember that being in the record. Well, let's say that even if that statement wasn't made, is there any evidence on the record that he failed to call the state attorney's office when expected to? No. I mean, you're saying that there would be something in the evidence saying that he was expected to call, like, regularly or something? I guess what I'm saying is it appears the record is silent as to any communications between him and the state attorney's office. So that could go either way. You don't know if he did it. You don't know if he didn't. But would you know that the state didn't, as a defense, say, well, Judge, he was supposed to call us and didn't do it? They didn't argue that, correct? No, he didn't argue that. You're correct. Well, the state would also assert that cooperation is defined by the agreement and that there was two prongs to the agreement. And we don't believe the defendant fulfilled this part of the agreement. And we also believe that he did not detrimentally lie on – there was no detrimental lies by him. And we'd ask the court to reverse the circuit. Thank you. Thank you. We take this matter to the advisory committee. We stand at recess until approval. Thank you again all for being here. The court will take a five- to ten-minute recess. And anyone who wants to ask any questions at the –